IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

04 NOV -4 PM 3: 26

CLERK-ALBUQUERQUE

EARL CAYADITTO and ETHEL MESCAL,
individually, and as natural and legal parents
of Ethan Cayaditto, deceased minor child, and
BRETT J. OLSEN, Esq., as the Personal
Representative of the ESTATE OF ETHAN
CAYADITTO, deceased minor child,

        Plaintiffs,

vs.

UNITED STATES OF AMERICA,

        Defendant.

CIV No. 04 - 1261 BB LFG

## COMPLAINT FOR MEDICAL NEGLIGENCE AND WRONGFUL DEATH

**COME NOW** the Plaintiffs, Earl Cayaditto and Ethel Mescal, individually, and as natural and legal parents of Ethan Cayaditto, deceased minor child, and Brett J. Olsen, as Personal Representative of the Estate of Ethan Cayaditto, a minor child, by and through their attorneys of record, Lamb, Metzgar, Lines & Dahl, P.A. (Steven Tal Young, Esq.), and offer the following as their Complaint against Defendant herein:

1. Plaintiffs, Earl Cayaditto and Ethel Mescal, are residents of the State of New Mexico, McKinley County, and at all times material were the legal and natural parents of Ethan Cayaditto. Brett J. Olsen, Esq., has been duly appointed to act as Personal Representative of the Estate of Ethan Cayaditto, the deceased infant son of Earl Cayaditto and Ethel Mescal, for purposes of the Wrongful Death Act, NMSA 1978, §41-2-3. Mr. Olsen has no status as a statutory beneficiary and has been named to bring suit and acts as the nominal party for all the statutory beneficiaries. Plaintiffs, Earl Cayaditto and Ethel Mescal, are also acting in their individual capacities and as legal and natural parents of Ethan Cayaditto with respect to the loss of consortium claim set forth below.

2. The acts and events complained of herein occurred in the State of New Mexico, McKinley County.

3. Defendant, United States of America, operates the Indian Health Service, an agency of the government of the United States of America and, through it, owns and operates Pueblo Pintado

Clinic in Pueblo Pintado, New Mexico, and Crownpoint Healthcare Facility in Crownpoint, New Mexico. The United States of America is the proper Defendant in this case, pursuant to the provisions of 28 U.S.C. §2679(A) and (B).

4. Jurisdiction is proper in this Court pursuant to the provisions of 28 U.S.C. §1346.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1402(b).

6. These claims were first submitted for agency consideration pursuant to 28 U.S.C. §2675(A) on May 7, 2004, with acknowledgment of said claims being made by letter dated May 10, 2004. The agency provided written notification that the claim was denied on September 27, 2004 and, therefore, agency resolution has been achieved. Accordingly, Plaintiffs are entitled to file this Complaint against the federal government in light of the final denial of these claims pursuant to 28 U.S.C. §2675(b).

## *FACTUAL ALLEGATIONS*

7. Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 6 above as if set forth fully herein.

8. On the morning of December 16, 2002, Plaintiffs' decedent, Ethan Cayaditto, who was then thirteen (13) months old, was taken by the Plaintiffs, Earl Cayaditto and Ethel Mescal, to the IHS Emergency Room in Crownpoint, New Mexico, where he was seen by IHS physician, Dr. Kulas, and Ethan's pediatrician, Dr. Hurlbutt.

9. Plaintiffs reported to Dr. Kulas and Dr. Hurlbutt that Ethan had a bad cough and fever and would not go to sleep. He also had severe irritability, dehydration and a rash on his face, chest, arms, back and neck, for two (2) days.

10. Ethan's pulse, per Dr. Hurlbutt's examination, was 148 with respirations of 46 and $O_2$ saturation on room air of 92%. His temperature was 99.5°. Clinical resume indicates that he screamed while being examined and his chest exam showed an expiratory Rhonchi and crackles bilaterally.

11.     Ethan's symptoms, hospitalization course, and clinical history were consistent with severe bronchiolitis with bronchitis.

12.     A viral screen of Ethan's nasopharynx performed two weeks prior to his death was positive for RSV which did not prohibit the diagnosis of RSV associated bronchiolitis. Ethan's previous history of prematurity and hospitalizations for bronchiolitis indicate he was more susceptible to severe complications with RSV infection. Ethan's condition was easily detectable by a physician exercising ordinary care under the circumstances.

13.     An RSV test performed after admission on December 17, 2002, was positive.

14.     Dr. Hurlbutt discharged Ethan on December 19, 2002 with a diagnosis of bronchiolitis, severe irritability and diaper rash. She sent Ethan home at approximately 12:30 p.m. on December 19, 2002, to White Horse Lake, New Mexico (approximately 35 miles from Crownpoint) with instructions to follow up at Pueblo Pintado Clinic on December 23, 2002. Ethan continued to have a bad cough and fever at the time of discharge and continued to cough and had a fever all night long on December 19-20, 2002.

15.     By mid-morning on December 20, 2002, Ethan's cough persisted and he was inconsolable. As instructed, Ethan's parents drove him to Pueblo Pintado Clinic, located approximately 15 minutes from their home and approximately 20 minutes in the opposite direction of Crownpoint. During transport, Ethan's condition became severe, he stopped breathing and lost consciousness. Upon arrival at the clinic, Ethan's parents discovered it was closed.

16.     IHS physician, Dr. Walters, was scheduled to arrive at 12:00 p.m. that day, December 20, 2002, but did not arrive until 1:00 p.m. Construction workers at the site attempted cardiopulmonary resuscitation at Pueblo Pintado.

17.     Nurses who arrive on scene determined Ethan to be without pulse or respiratory effort. Cardiopulmonary resuscitation was continued for more than an hour, without success.

18.     The ambulance that was dispatched by Defendant from Crownpoint went to the wrong location. Instead of stopping at the clinic, the ambulance drove past the clinic, through Pueblo

3

Pintado, to the Pueblo Pintado School, before later returning to the clinic, thereby causing delay in assessment and treatment of Ethan's condition, including attempts to resuscitate.

19. Ethan returned to the Crownpoint Emergency Room by ambulance, arriving pulseless with pupils fixed and dilated. CPR was stopped and there was no reading on the pulse oximeter.

20. All resuscitation efforts were futile and Ethan was pronounced dead at 1:47 p.m., December 20, 2002.

21. Ethan died of acute bronchiolitis/bronchitis, which was caused by respiratory syncytial virus (RSV). Bronchiolitis is a common condition in infants and children and occurs most commonly in the winter months. RSV is the most common cause of bronchiolitis.

22. Ethan was positive for RSV upon admission. Proper assessment and evaluation would have revealed that RSV had developed into bronchiolitis/bronchitis and that the condition was severe. With appropriate medical intervention, observation and medical care, Ethan had a 100% chance of surviving the infection.

## COUNT I: CLAIMS AGAINST DEFENDANT UNITED STATES OF AMERICA

23. Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 22 above as if set forth fully herein.

24. Defendant, its agents, agencies and employees, breached their duty of care and were negligent in failing to establish appropriate protocols in the management and assessment of infants presenting with Ethan's symptoms and bronchiolitis/bronchitis.

25. Defendant, its agents, agencies and employees, breached their duty of care and were negligent in failing to properly diagnose and manage Ethan's medical condition on December 17, 2002 through December 20, 2002.

26. Defendant, its agents, agencies and employees, were negligent in their care of Ethan Cayaditto on December 17, 2002 through December 20, 2002, in the following respects:

    a. Failing to recognize that Ethan's clinical presentation was consistent with RSV, which could and did lead to bronchiolitis/bronchitis.

4

b.  Failing to conduct appropriate testing to determine whether Ethan Cayaditto was suffering from RSV.

c.  Failing to recognize that Ethan Cayaditto should have been kept in the hospital for observation and care in the event of breathing difficulties and further complications.

d.  Failing to recognize that Ethan Cayaditto should not have been discharged to a location approximately 35 miles from the facility.

e.  Failing to recognize that the clinic to which Ethan Cayaditto was referred, namely Pueblo Pintado Clinic, was not equipped to assess and treat his condition in the event of further complications.

f.  Failing to recognize that the clinic to which Ethan Cayaditto was referred, namely Pueblo Pintado Clinic, would not be open at a critical period of time in the event Ethan experienced further complications the morning following discharge.

g.  Failing to recognize that the hours of operation of the clinic and the time of arrival of medical staff were critical to Ethan Cayaditto in light of his condition and the distance Ethan would have to travel to return to Crownpoint.

h.  Failing to properly staff the Pueblo Pintado Clinic at a time that was critical in relation to the instruction that he be taken to the Clinic in the event that his condition worsened.

i.  Failing to recognize that Ethan Cayaditto's clinical presentation was consistent with RSV, and;

j.  Discharging Ethan with inadequate medication and instructions when his medical condition required that he receive further treatment and observation to save his life.

27.  Defendant's negligence, as set forth above, proximately caused, directly and/or indirectly, Ethan Cayaditto's pain, suffering and death.

## *DAMAGES*

28.  Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 27 above as if set forth fully herein.

29.     Defendant's negligence, as set forth above, caused Plaintiffs to suffer the following elements of damages:

    a.  Funeral expenses.

    b.  Loss of past, present, and future earnings.

    c.  Emotional distress.

    d.  Pain and suffering.

    e.  Loss of consortium (including the right to take company of the other, society, cooperation, affection, guidance and companionship).

    f.  Severe shock as a result of the direct, emotional impact caused by the contemporaneous sensory perception of these acts and events.

    g.  Loss of enjoyment of life.

    h.  Physical manifestation of their emotional injuries.

**WHEREFORE,** Plaintiffs, Earl Cayaditto and Ethel Mescal, individually, and as natural and legal parents of Ethan Cayaditto, deceased minor child, and Brett J. Olsen, Esq., as the Personal Representative, pursuant to the New Mexico Wrongful Death Act, NMSA 1978, § 41-2-3, respectfully request an award of monetary damages in an amount reasonably necessary to compensate them and the Estate of Ethan Cayaditto for their injuries and damages, for pre- and post-judgment interest, costs, and for such other and further relief as the Court deems just in the premises.

Respectfully submitted,

**LAMB, METZGAR, LINES & DAHL, P.A.**

By: _____
STEVEN TAL YOUNG
Attorneys for Plaintiffs
P.O. Box 987
Albuquerque, NM 87103
(505) 247-0100 telephone
(505) 247-9249 facsimile

c:\myfiles\sty\Cayaditto\Complaint