IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EARL CAYADITTO and ETHEL MESCAL, individually,
and as natural and legal parents of Ethan Cayaditto, deceased
minor child, and BRETT J. OLSEN, Esq., as the Personal
Representative of the ESTATE OF ETHAN CAYADITTO,

        Plaintiffs,

        vs.                                     No. CIV-04-1261 JC/DJS

UNITED STATES OF AMERICA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss Plaintiffs' Claims for Negligent Infliction of Emotional Distress/Bystander Liability, filed September 27, 2005 (*Doc.* 60). Defendant moves for judgment in this case on the grounds that Plaintiff Ethel Mescal cannot maintain an action for negligent infliction of emotional distress/bystander liability under New Mexico state law, and that consequently, the claim cannot be brought pursuant to the Federal Tort Claims Act, against the United States. The Court has reviewed the Motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds the Motion well taken, and it is **granted.**

### I.    Background

This case arises from a wrongful death action based on the care and treatment provided to Ethan Cayaditto, a thirteen month old child, at Crownpoint Indian Health Facility and its satellite facility at Pueblo Pintado. Plaintiffs claim that both facilities and its health providers did not

assess or treat the child's acute bronchiolitis and RSV, despite obvious indications of risk.

Ethan was admitted to the Crownpoint Comprehensive Health Care Facility on December 17, 2002, by Dr. Donald Kulas. Ethan had been taken to the emergency room at Crownpoint because he was inconsolably crying and had a rash. The rash eventually receded and Ethan was discharged to his home, which is 35 miles away from Crownpoint, on December 19, 2002, by Dr. Tania Hurlbutt. Both Doctors Hurlbutt and Kulas are Board certified pediatricians. Ethan had been admitted to Crownpoint twice previously: once in May 2002 and once only a few weeks earlier that December.

On the morning of December 20, 2001, after Ethan was awake that night coughing, Plaintiff Ethel Mescal attempted to transport Ethan to a health care provider. After stopping to pick up another passenger to hold Ethan while she could drive, Plaintiff Mescal headed toward the Pueblo Pintado clinic. Plaintiff arrived at the clinic, but it was not open yet, and only construction workers were at the facility. An ambulance was called for the transfer of Ethan to Crownpoint. CPR was performed on Ethan, but by the time the ambulance arrived he was dead. Ethan's mother and father are now bringing a wrongful death action against the United States of America, which operates the facilities in question, and Plaintiff Mescal is bringing a claim of negligent infliction of emotional distress. Defendant seeks to have this specific claim dismissed with prejudice.

**II.    Standard of Review**

A complaint may be dismissed pursuant to Rule 12(b)(1) if the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). When considering a motion under Rule 12(b), reference to evidence outside the pleadings does not automatically convert the motion into a Rule 56 motion

2

for summary judgment. *Holt v. United States*, 46 F.3d 1000,1003 (10th Cir. 1995). If the jurisdictional questions presented under Rule 12(b) become intertwined with the merits of the case, however, the court must convert the motion to one falling under Rule 12(b)(6) or for summary judgment. *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999). When subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined. *Clark v. Tarrant County*, 798 F.2d 736, 742 (5th Cir.1986) (citing *Bell v. Hood*, 327 U.S. 678 (1946)). Indeed, when a motion is made on the grounds of both 12(b)(1) and 12(b)(6), and both parties submit material beyond the pleadings, the Court may convert the motion into one for summary judgment under Rule 56. *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987).

In the present case, the Motion requests dismissing Plaintiffs' claim for negligent infliction of emotional distress/bystander liability under 12(b)(1) and 12(b)(6), and both parties have submitted extraneous materials beyond the pleadings. Further, because Plaintiffs' basis of jurisdiction, as well as the substance of their claims, lies in the Federal Tort Claims Act, a jurisdictional issue does become intertwined with a substantive claim in the complaint. Therefore, the Court converts the Motion into one for summary judgment.

Under FED. R. CIV. P. 56, summary judgment is proper in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Handy v. Price*, 996 F.2d 1064, 1066 (10th Cir. 1993). The moving party bears the initial burden of establishing that no genuine issue exists as to any material fact. *Nat'l Union Fire Ins. Co. v. Emhart Corp.*, 11 F.3d 1524, 1528 (10th Cir. 1993). Once the initial burden has been

met, the burden then shifts to the non-moving party to show that a genuine issue of material fact remains for the fact finder to resolve. *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1194 (10th Cir. 1994). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986)).

## III.    Discussion

Under the Federal Tort Claims Act (FTCA) sovereign immunity is chipped away, as the United States may be liable "in the same manner and to the same extent as a private individual under like circumstances ..." 28 U.S.C. § 2674. Substantive liability in FTCA complaints is governed by whether state law gives rise to a recoverable cause of action. Therefore, liability questions are resolved in accordance with the law of the state where the tortious activity occurred. *Hoery v. United States*, 324 F.3d 1220, 1222 (10th Cir. 2003).

The Court, then, must examine how New Mexico has interpreted and defines the tort of negligent infliction of emotional distress (NIED). In New Mexico, a claim for NIED exists where "(1) the plaintiff and the victim enjoyed a marital or intimate family relationship, (2) the plaintiff suffered severe shock from the contemporaneous sensory perception of the accident, and (3) the accident caused physical injury or death to the victim." *Folz v. State*, 798 P.2d 246, 260 (1990). It cannot be disputed that the first and third elements of this tort are met. Plaintiff Ethel Mescal was Ethan Cayaditto's biological mother. Further, Defendant's alleged negligence did result in the death of Ethan Cayaditto. The second element of NIED, however, requires much more

analysis, as it has been subject to a very strict interpretation.  Indeed, the entire tort has been described as "extremely narrow" in its application.  *Fernandez v. Walgreen Hastings Co.*, 968 P.2d 774, 777 (N.M. 1998).

Both parties cite extensively to *Fernandez*, a New Mexico Supreme Court case. Defendant claims this case is completely analogous to the case at bar, however, while Plaintiffs argue that it is definitely distinguishable.  The Court agrees that *Fernandez* is remarkably on point with the case at bar.  In *Fernandez*, a grandmother brought an NIED action arising from the death of her twenty-two month old granddaughter.  *Id*. at 776.  The day after the child had been diagnosed with viral croup, she was given a mis-filled prescription from Walgreens and her condition worsened.  *Id*.  The child's mother drove her to the hospital, while the grandmother held her.  *Id*. at 776-777.  En route, the child began to suffocate, stopped breathing, and became comatose.  *Id*. at 777.  Two days later the child died after being removed from life support.  *Id*. The main issue left to resolve for the court was whether the grandmother's observation of her granddaughter in the car was a contemporaneous sensory perception of an accident, which is what is required under the second element of NIED.  *Id*.

The *Fernandez* court had concerns with the scope of this second element, and held that the meaning of an "accident" could not just refer to the victim's injury.  *Id*. at 778.  Indeed, as the court noted, if only observation of injury or death were sufficient to meet the definition of an "accident," a claim for NIED could be brought in every medical malpractice case.  *Id*.  As *Fernandez* notes, however, the tort of NIED was never meant to apply to those sorts of cases. *Id*. In *Fernandez,* instead of finding a sudden observable accident had occurred, the court found that

the child's airway blockage was a progressive, internal medical condition, and that what her grandmother observed was a progression of her granddaughter's injuries. *Id*. at 779.

In the case at bar, Defendant argues that Ethan Cayaditto was also suffering from a progressive medical condition prior to his death. Defendant suggests, like *Fernandez*, that Ethan's illness was not a sudden traumatic event, but instead an untreated condition which led to progressively worse results. *Fernandez* indicates that whether the injury to the victim was a progressive condition or a sudden traumatic event is the crux of the matter. Indeed, as the court notes, "[i]f we cannot point to a moment in time at which the sudden, traumatic, injury-producing event occurred, then we must assume that Plaintiff's shock and emotional distress resulted instead from witnessing the suffering and death of the victim, which, although tragic, is not compensable under NIED. *Id*. at 780. Events that can be attributed to exact moments, such as electrocution or car accidents, have previously met the definition of a sudden traumatic event. *Id*. at 777 (citing *Acosta v. Castle Constr., Inc.*, 868 P.2d 673, 674 (Ct. App. 1994); *Folz v. State*, 797 P.2d 246, 249 (1990)).

Plaintiffs argue that Ethel Mescal was able to observe a sudden, traumatic injury-producing event because she was aware of Ethan Cayaditto's injuries and condition prior to his death, and aware of the cause of his death. Resp. at 4. Plaintiffs agree, however, that Ethan's condition standing alone would not be enough to meet the definition of a sudden traumatic event. Resp. at 5. Yet, Plaintiffs argue that a prolonged medical condition, ultimately resulting in the cause of death, can still produce a sudden traumatic event, which would also be the cause of death. *Id*. Plaintiffs never quite suggest, however, what the sudden traumatic negligent event is, that would

be different than Ethan dying of bronchiolitis.

Plaintiffs explicitly claim that the "accident" in this case was that Ethan was not treated properly by the physicians in question. This same definition of an accident was in question in *Fernandez*. Accordingly, the court held that for purposes of NIED analysis, "going untreated .... cannot possibly be comprehended as a sudden traumatic event." *Fernandez*, 968 P.2d at 780. As *Fernandez* notes, "although undoubtedly horrific and tragic, witnessing a victim's suffering and death is not compensable under NIED." *Id*. at 779. What happened to Ethan Cayaditto is undoubtedly tragic, but the second element of NIED is not met here.

Therefore, the Court has no choice but to grant Defendant's motion for summary judgment and to dismiss this claim with prejudice.

Wherefore,

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Claims for Negligent Infliction of Emotional Distress/Bystander Liability, filed September 27, 2005 (*Doc*. 60) is **granted.**

DATED this 5th day of January, 2006.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiffs:
    Steven Tal Young, Esq.
    Jeffrey A. Dahl, Esq.
    Lamb, Metzgar, Lines & Dahl, P.A.
    Albuquerque, New Mexico

Counsel for Defendant:
    Virgil H. Lewis II, Esq.
    Assistant U.S. Attorney
    Albuquerque, New Mexico