IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EARL CAYADITTO and ETHEL MESCAL,
individually, and as natural and legal parents
of Ethan Cayaditto, deceased minor child, and
BRETT J. OLSEN, Esq., as the Personal
Representative of the ESTATE OF ETHAN
CAYADITTO, deceased minor child,

        Plaintiffs,

vs.　　　　　　　　　　　　　　　　　　　　　　　　No. CIV 04-1261 JC/LFG

THE UNITED STATES OF AMERICA,

        Defendant.

### DEFENDANT'S PROPOSED SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW, Defendant United States of America, by and through its undersigned attorneys and proposes the following Supplemental Findings of Fact and Conclusions of Law.

### Supplemental Proposed Findings of Fact

1. On December 19, 2002, Ethan Cayaditto's medical condition, including his vital signs and oxygen saturation were medically appropriate for his discharge from the Crownpoint Hospital.

2. The medical providers at Crownpoint Hospital had considered the distance to his home at Whitehorse Lake and the fact that the home lacked utilities before discharging Ethan Cayaditto.

    3.       The providers at Crownpoint Hospital ordered albuterol in a form (MDI with spacer) which was appropriate for a residence without utilities.

    4.       Dr. David Josephs, Ethan Cayaditto's primary care physician, had visited that home in the past and was familiar with the distance from Crownpoint to the home itself.

    5.       None of Ethan Cayaditto's physicians including Dr. Kulas, Dr. Hurlbutt, and Dr. Josephs expected or anticipated that Ethan Cayaditto would need emergent treatment after his discharge from the Crownpoint Hospital.

    6.       Had the need for emergent care been expected or anticipated, Ethan Cayaditto would not have been discharged from Crownpoint Hospital on December 19, 2002.

    7.       Dr. Kulas instructed Ms. Mescal, Ethan's mother, that he would be in the Emergency Room at Crownpoint during the night on December 19th, and that she could call or bring Ethan in should his condition worsen.

    8.       Dr. Kulas instructed Ms. Mescal that his expectation was that Ethan would continue to improve, and if he did not, this was a change in condition for which Ethan should be seen sooner than his Monday, December 23rd appointment.

    9.       Ms. Mescal had demonstrated her ability to judge Ethan's condition and had taken Ethan to the Emergency Room on December 17, 2002, for admission, in addition to other visits to the Emergency Room.

    10.      Patients are discharged from the hospital at a time when their condition is improving, with expectations that they will continue to improve.

    11.      Ethan's condition on December 19th had improved. He was no longer

inconsolable or irritable. His vital signs were normal.

12. Ethan Cayaditto was discharged from the Crownpoint Hospital at 10:30 a.m. on December 19, 2002. Ethan Cayaditto was taken home to Whitehorse Lake.

13. At some time on the evening of December 19, 2002, Ethan Cayaditto was taken to the Pueblo Pintado trailer where his father, Earl Cayaditto lived.

14. Ethan stayed for approximately one hour, and Earl Cayaditto believed Ethan had a fever and was ill.

15. Earl Cayaditto did not discuss the possibility of Ethan Cayaditto remaining at the Pueblo Pintado trailer.

16. Ethan Cayaditto returned to Whitehorse Lake with his mother later that evening.

17. Marina Sandoval was taking care of Ethan Cayaditto during the night of December 19, and the early morning of December 20, 2002.

18. Marina Sandoval administered the albuterol medication via the MDI with spacer, and Ethan went to sleep in the early morning of December 20, 2002.

19. Ethel Mescal left the trailer at Whitehorse Lake with Ethan about 7:15 a.m. on December 20, 2002, and drove thirteen miles to Pueblo Pintado to wait for the clinic to open at 1:00 p.m., or as soon as the providers arrived.

20. At some point, Ethan's respiratory distress condition became emergent, and Ms. Mescal drove back to Whitehorse to pick up Marina to assist her with Ethan.

21. Ms. Mescal arrived at Whitehorse at approximately 11:45 a.m. according to the report prepared that same day by Naomi Martin, EMT.

22. Marina Sandoval's description when she first took him out of the front seat

of the vehicle at Whitehorse, recorded by EMT Naomi Martin on page L30 of Exhibit 2, included "Eyes were halfway open, and eyeballs were not moving and had a stared look."

23. The EMT report included that Marina Sandoval noticed milk and clear fluid in his mouth.

24. Ethel Mescal demonstrated to the health care providers that she was a competent and reliable care giver for her seven children, including Ethan.

25. The providers at Crownpoint believed that Ethel Mescal would be consistent with her past actions and bring Ethan back to the appropriate facility for care depending on his condition.

26. In the five hour period of 7:30 a.m. to approximately 12:30 p.m. on December 20, 2002, Ethel Mescal did not take Ethan Cayaditto to an open medical care facility.

27. Ethan Cayaditto suffered an unpredicted respiratory arrest due to occlusion of his airway on December 20, 2002.

28. Ethel Mescal stated that she "panicked."

29. Ethan Cayaditto was deceased prior to his arrival at Pueblo Pintado Clinic on December 20, 2002.

30. Healthcare providers have no control over where their patients live, or the conditions of their living arrangements, including utilities.

31. The acute event resulting in Ethan Cayaditto's respiratory arrest and subsequent death was not foreseeable.

32. Had Ethan Cayaditto been brought back to the Emergency Room at

Crownpoint during his worsening of symptoms, he would most likely have been treated successfully.

### Supplemental Proposed Conclusions of Law

1. The failure to return Ethan to the Crownpoint Emergency Room resulted in comparative negligence on the part of the parents.

2. The actions of Ethel Mescal in failing to return Ethan to the Crownpoint Hospital during the twenty four hour period preceding his respiratory arrest precluded any opportunity for the medical providers to successfully treat and resuscitate Ethan Cayaditto.

Respectfully submitted,

DAVID C. IGLESIAS
United States Attorney

*/s/ (Filed electronically 01-30-06)*
VIRGIL H. LEWIS II
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on January 30, 2006, a true and correct copy of the foregoing pleading was served by First Class Mail on the following counsel of record:

Steven Tal Young, Esq.
Jeffrey A. Dahl, Esq.
Lamb, Metzgar, Lines & Dahl, P.A.
P.O. Box 987
Albuquerque, NM 87103

*/s/ (filed electronically 1-30-06)*
Assistant U.S. Attorney

*N:\CLarson\Virgil\supplemental Proposed facts and conclusions.wpd*